**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE | ) | |
| | ) | |
| *Plaintiff,* | ) | CASE NO.: |
| | ) | |
| v. | ) | |
| | ) | JUDGE: |
| UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE, *et al.* | ) | |

## <u>MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiff John Doe ("Doe"), by and through undersigned counsel, respectfully moves this Honorable Court for an order preliminarily enjoining Defendants, United States Patent and Trademark Office ("USPTO"), Kimberly C. Kelleher ("Kelleher") in her official capacity as Director of the USPTO Office of Enrollment and Discipline, and John A. Squires ("Squires") in his official capacity as Under Secretary of Commerce for Intellectual Property and Director of the USPTO, from proceeding with the prosecution of the attorney disciplinary case against Plaintiff Doe pending adjudication of this civil action on the merits by this Honorable Court.

The basis for this Motion is set forth in the attached Memorandum in Support, which is incorporated by reference herein.

Dated: July 23, 2026          Respectfully submitted,

/s/ *Daniel J. Rudary*
Daniel J. Rudary (0090482)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH  44308
Telephone:    (330) 253-5060
Facsimile:    (330) 253-1977
E-mail:    djrudary@bmdllc.com

Michael E. McCabe, Jr.
(*Pro Hac Vice* Motion Pending)
**MCCABE ALI LLP**
9233 Fall River Lane
Potomac, Maryland 20854
Telephone:    301.798.1110
Facsimile:    310.828.8181
Email:    mike@mccabeali.com

*Counsel for Plaintiff John Doe*

2

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      FACTUAL BACKGROUND**

Plaintiff Doe is an attorney registered to practice in patent matters before the United States Patent and Trademark Office ("USPTO"). *Compl.* (Doc #: 1) at ¶ 1. On August 12, 2025, the USPTO's Office of Enrollment and Discipline ("OED") filed a formal "Complaint and Notice of Hearing Under 35 U.S.C. § 32" (hereinafter, "Complaint") against Plaintiff Doe (hereinafter, the "Disciplinary Case"). *Id.* at ¶ 9. The Complaint seeks an order suspending and/or excluding Plaintiff Doe from practice before the USPTO. *Id.*

In pertinent part, 35 U.S.C. § 32 provides that the USPTO Director "shall have the discretion to designate any attorney who is an officer or employee of the United States Patent and Trademark Office to conduct the hearing required by this section." In this case, the USPTO Director did not designate "any attorney who is an officer or employee of the [USPTO] to conduct the hearing required by this section." Instead, OED's Complaint against Plaintiff Doe was "filed" via email with the United States Department of Housing and Urban Development ("HUD") Office of Hearings and Appeals, whereupon the Disciplinary Case was assigned to HUD Administrative Law Judge Alexander Fernández-Pons ("ALJ Fernández-Pons") for further proceedings. As the hearing officer, ALJ Fernández-Pons is empowered to conduct a trial and issue an initial decision, which will include proposed findings of fact, conclusions of law, and a recommended sanction. *Compl.* (Doc #: 1) at ¶ 10.  At present, Plaintiff's Disciplinary Case is set to proceed to trial before ALJ Fernández-Pons on October 14, 2026. *Id.* at ¶ 41.

ALJ Fernández-Pons is an employee of HUD, and is not an officer or employee of the USPTO. *Compl.* (Doc #: 1) at ¶¶ 11-12.  Indeed, the USPTO does not employ any Administrative Law Judges who are appointed under 5 U.S.C. § 3105. *Id.* at ¶ 19. This is confirmed by the

1

USPTO's February 24, 2026 response to a Freedom of Information Act ("FOIA") request submitted by one of Plaintiff Doe's attorneys in the Disciplinary Case, which confirms, that, at least since 2000, the "USPTO does not employ Administrative Law Judges." *Compl.* at Exh. A (Doc #: 1-1).

The USPTO has defended the filing of its Complaint against Plaintiff Doe with the HUD Office of Hearings and Appeals by citing to an "Interagency Agreement Between The Department of Housing and Urban Development And The United States Patent and Trademark Office For Performance of Reimbursable Work" (the "HUD Interagency Agreement"), signed March 27, 2013. *Compl.* (Doc #: 1) at ¶ 22; *see also id.* at Exh. B (Doc #: 1-2) (Interagency Agreement).

The HUD Interagency Agreement "sets forth the terms and conditions by which HUD agrees to provide ALJs, support staff, and court reporters to conduct formal proceedings and to hear and decide cases sent to it for adjudication by USPTO." *Compl.* at Exh. B (Doc #: 1-1). The HUD Interagency Agreement further requires HUD to "furnish USPTO with all appropriate billing information" including "number of hours worked by the ALJ and support personnel, and cost" and mandates that "HUD will furnish itemized bill [*sic*] to USPTO for reimbursement on a regular basis." *Id.* This "pay for play" system has worked well for OED: HUD ALJs disproportionately rule in favor of OED and against practitioner respondents. In fact, Plaintiff's counsel is unaware of any decision in which ALJ Fernández-Pons has refused to recommend a public disciplinary sanction against a practitioner in a USPTO disciplinary proceeding in a period that spans over 14 years. *Compl.* (Doc #: 1-1) at ¶ 29.

Plaintiff has filed his Complaint and Motion for Preliminary Injunction in this Court to redress the immediate harm that he is being subjected to as a result of having to submit to illegally structured disciplinary proceedings before ALJ Fernández-Pons. As developed in further detail

2

herein,  ALJ Fernández-Pons is not authorized to preside over Respondent's Disciplinary Case insofar as he is not within the class of persons (i.e., any attorney who is an "officer or employee" of the USPTO) who the USPTO Director has discretion to designate to preside over attorney disciplinary proceedings under 35 U.S.C. § 32. Insofar as the hearing in Plaintiff Doe's disciplinary case has not yet commenced (and will not commence, unless enjoined by this Court, until October 14, 2026), Plaintiff Doe has not exhausted administrative remedies. Plaintiff Doe has not exhausted administrative remedies because his challenge to the filing of his Disciplinary Case before ALJ Fernández-Pons concerns the overall structure of the proceedings under *Axon Enterprise, Inc. v. Federal Trade Commission,* 598 U.S. 175 (2023), and is not based on the underlying facts of the Disciplinary Case.

## II.     ARGUMENT

### A.     The Standard for Granting a Motion for Preliminary Injunction.

When considering a motion  for preliminary injunction, the Court must consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without an injunction; (3) whether issuance of an injunction would cause substantial harm to others; and (4) whether the public interest would be served by the injunction. *See National Credit Union Administration Board v. Jurcevic*, 867 F.3d 616, 622 (6th Cir. 2017); *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007).

**B.      Plaintiff Has a Strong Likelihood of Success on the Merits.**

**1.      35 U.S.C. § 32 Does Not Permit the USPTO to File Attorney Disciplinary Cases Before Administrative Law Judges Who Are Not "Officers" or "Employees" of the USPTO.**

The crux of this case is whether the USPTO is acting in violation of federal law by prosecuting Plaintiff's Disciplinary Case before ALJ Fernández-Pons, an employee of the U.S. Department of Housing and Urban Development. Plaintiff submits that a plain reading of 35 U.S.C. § 32, which governs USPTO disciplinary proceedings, compels the conclusion that ALJ Fernández-Pons is outside the limited class of persons who the USPTO Director has discretion to designate to conduct disciplinary hearings.

Pursuant to 35 U.S.C. § 32, "***The Director shall have the discretion to designate any attorney <u>who is an officer or employee of the United States Patent and Trademark Office</u> to conduct the hearing required by this section***." Implementing regulations, in turn, require that "[a] hearing officer designated by the USPTO Director shall conduct disciplinary proceedings as provided by this part." 37 C.F.R. § 11.39(a). Pursuant to those same regulations, "[a] hearing officer […] shall be either an administrative law judge appointed under 5 U.S.C. § 3105 or an attorney designated under 35 U.S.C. 32." 37 C.F.R. § 11.39(b)(4).

Read in tandem, as they must be, 37 C.F.R. § 11.39 and its enabling statute, 35 U.S.C. § 32, require that the person presiding over a matter such as Plaintiff's Disciplinary Case be (a) "designated by the USPTO Director" and (b) an "officer or employee" of the USPTO who is either an administrative law judge appointed under 5 U.S.C. § 3105 or an attorney. Because ALJ Fernández-Pons is not an "officer or employee" of the USPTO, his appointment to preside over Plaintiff's Disciplinary Case does not comport with 35 U.S.C. § 32 and is contrary to law. 5 U.S.C. § 706(2)(A) and (B).

4

In response, the USPTO may rely on *Bender v. Dudas*, 2006 WL 89831 (D.D.C. Jan. 13, 2006), which held that the language of 35 U.S.C. § 32 is permissive and does not require the USPTO Director to appoint "any attorney who is an officer or employee of the United States Patent and Trademark Office to conduct the hearing required by this section." Plaintiff submits that *Bender* should not be followed for at least two reasons. First, in reaching the conclusion that the USPTO Director is not required to appoint a USPTO employee to preside over disciplinary proceedings, the *Bender* court gave deference to the USPTO's interpretation of 35 U.S.C. § 32 under *Chevron, U.S.A., Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). *See Bender* at \*24 (*citing Chevron*). Since *Bender* was decided, *Chevron* has been overruled by the U.S. Supreme Court. *See Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024) ("*Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires."). Accordingly, Plaintiff respectfully submits that the USPTO may no longer rely on outdated notions of "deference" in support of its interpretation of 35 U.S.C. § 32. Insofar as *Bender* itself relied on precedent that has since been overruled, the analytical foundations of *Bender* have been significantly undermined, and the persuasive weight of that decision must be called into question.

Second, *Bender* itself acknowledged that "it is not clear whether the provision [35 U.S.C. § 32] permits a non-PTO employee to be appointed as the ALJ." *Bender* at \*24. Insofar as the *Bender* court found the statute unclear, it gave *Chevron* deference to USPTO's interpretation (which, as noted above, is no longer in accordance with binding Supreme Court precedent).

Applying a plain text reading of 35 U.S.C. § 32—as this Court must now do under *Loper Bright*—Plaintiff submits that the more accurate interpretation of the statute is that 35 U.S.C. § 32

limits the universe of designees who may be appointed to preside over USPTO disciplinary hearings to attorneys who are "officers and employees" of the USPTO.

To begin with, the statute provides that "*[t]he Director may*, after notice and opportunity for a hearing, *suspend or exclude*, […], any person, agent, or attorney shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations established under section 2(b)(2)(D), […]." 35 U.S.C. § 32 (emphasis added). The statute goes on to state that "[t]he Director *shall have the discretion to designate any attorney who is an officer or employee of the United States Patent and Trademark Office* to conduct the hearing required by this section." *Id.* (emphasis added). While the USPTO reads this to mean that the Director has discretion to appoint any number of persons (including but not limited to an "officer or employee" of the USPTO) to preside over disciplinary proceedings, the correct reading of the statute is that the Director's discretion is limited to designating an "*officer or employee of the United States Patent and Trademark Office*" to preside over such matters. This reading is supported by the cannon of *expressio unius est exclusio alterius*, which provides that "expressing one item of an associated group or series excludes another left unmentioned." *N.L.R.B. v. SW Gen., Inc.*, 580 U.S. 288, 302 (2017); *see also Zhang v. Genalo*, 814 F.Supp.3d 307, 321–22 (E.D.N.Y. 2025) ("the omission of a particular item from a list of specifically designated items should be understood as an intentional exclusion of the omitted item."). In this case, 35 U.S.C. § 32 limits the class of individuals who may preside over an attorney disciplinary hearing to "any attorney who is an officer or employee of the" USPTO. The statute's inclusion of this discrete class of persons necessarily excludes non-employees of the USPTO like ALJ Fernández-Pons.

Thus, while *Bender* may have been correct in holding that that the language of 35 U.S.C. § 32 is discretionary, the "discretion" vested in the USPTO Director is limited to his appointment

6

of any attorney who is an "officer or employee" of the USPTO to preside over a disciplinary matter. This "discretion" does not extend, per the plain language of the statue, to appointing non-officers or non-employees of the USPTO to preside over such matters.

Otherwise, Congress could have easily written that the Director may appoint an officer or employee of USPTO *or any another agency* to preside over disciplinary proceedings. Congress did not do so. Instead, the legislature expressly provided that the Director "shall have *the discretion to designate any attorney who is an officer or employee of the United States Patent and Trademark Office* to conduct the hearing required by this section." 35 U.S.C. § 32 (emphasis added). This Court should enforce the language that Congress enacted and hold that the USPTO Director's "discretion" is limited to appointing any attorney who is an "officer or employee" of the USPTO to preside over attorney disciplinary hearings. Because the USPTO Director has not done so in this case, the USPTO's prosecution of the Disciplinary Case before ALJ Fernández-Pons must be enjoined as contrary to law.

      **2.**     **The USPTO Cannot Rely on 35 U.S.C. § 2(b)(5) to Justify the Filing of Attorney Disciplinary Cases Before Administrative Law Judges Outside the USPTO.**

In response to the arguments raised by Plaintiff, it is expected that the USPTO will rely on 35 U.S.C. § 2(b)(5) to justify its prosecution of attorney disciplinary cases before ALJs employed by other federal agencies. Indeed, the USPTO has expressly cited to 35 U.S.C. § 2(b)(5) to justify the "Interagency Agreement" it has entered into with HUD for the use (on a reimbursable basis) of HUD personnel for USPTO attorney disciplinary proceedings. *See Compl.* (Doc #: 1) at ¶ 22, Interagency Agreement (Doc #: 1-2).

35 U.S.C. § 2(b)(5) is a generic statute relating to USPTO's operations. In pertinent part, the statute provides that the USPTO "may use, with their consent, services, equipment, personnel,

7

and facilities of other departments, agencies, and instrumentalities of the Federal Government, on a reimbursable basis, and cooperate with such other departments, agencies, and instrumentalities in the establishment and use of services, equipment, and facilities of the Office." Unlike the specific provisions of 35 U.S.C. § 32, 35 U.S.C. § 2(b)(5) makes no reference to attorney disciplinary proceedings. This distinction is critical, insofar as the more specific provisions of 35 U.S.C. § 32 must prevail over the generic employee-borrowing provisions of 35 U.S.C. § 2(b)(5).

It is well established that "[a] general statutory rule usually does not govern unless there is no more specific rule." *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 524 (1989); *see also Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445 (1987) ("As always, '[w]here there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.'") (internal citations omitted). Here, there is a specific statutory rule governing disciplinary proceedings, 35 U.S.C. § 32. As discussed above, this more specific statute provides that the USPTO Director has discretion to appoint any attorney who is an "officer or employee of the United States Patent and Trademark Office" to preside over attorney disciplinary hearings. Had Congress intended for officers or employees of other agencies to preside over USPTO disciplinary proceedings, it could have easily written this into 35 U.S.C. § 32 (as it did with respect to USPTO's ability to use employees of other agencies for its general operations under 35 U.S.C. § 2(b)(5)). The fact that Congress limited the USPTO Director's discretion to appoint an "officer or employee of the United States Patent and Trademark Office" to preside over disciplinary proceedings reflects the legislature's intent to keep USPTO disciplinary proceedings "in house" and limit the class of federal employees qualified to preside over such proceedings. Accordingly, the USPTO may not rely on the generic provisions of 35 U.S.C. § 2(b)(5) to

8

circumvent the specific statutory criteria limiting who the USPTO Director may designate to preside over attorney disciplinary matters under 35 U.S.C. § 32.

> **3.    Because it is Permanently Without Any ALJs of its Own, USPTO Cannot Utilize 5 U.S.C. § 3344 to "Borrow" ALJs From Other Federal Agencies.**

Finally, the USPTO may assert that it is authorized by 5 U.S.C. § 3344 to "borrow" ALJs appointed under 5 U.S.C. § 3105 from HUD to preside over disciplinary proceedings. Pursuant to 5 U.S.C. § 3344, "[a]n agency as defined by section 551 of this title *which occasionally or temporarily is insufficiently staffed with administrative law judges* appointed under section 3105 of this title may use administrative law judges selected by the Office of Personnel Management from and with the consent of other agencies" (emphasis added).

Section 3344 does not permit the USPTO Director to designate ALJ Fernández-Pons (or any other ALJ outside of the USPTO, for that matter) to preside over the hearing in this matter because the USPTO is not "occasionally or temporarily [….] insufficiently staffed with administrative law judges appointed under section 3105 of this title." *Id.* To be clear, USPTO does not employ *any* "administrative law judges appointed under section 3105 of this title." *See* 5 U.S.C. § 3105 (providing, "Each agency shall appoint as many administrative law judges as are necessary for proceedings required to be conducted in accordance with sections 556 and 557 of this title."). Plaintiff is not aware of any ALJs who are currently (or ever have been) employed by USPTO under the authority of 5 U.S.C. § 3105. This is confirmed by the USPTO's February 24, 2026 response to a Freedom of Information Act ("FOIA") request submitted by one of Plaintiff Doe's attorneys in the Disciplinary Case, which confirms, the "USPTO does not employ Administrative Law Judges." *See Compl.* at Exh. A (Doc #: 1-1).

9

Because USPTO does not employ *any* ALJs "appointed under section 3105 of this title," USPTO is not "occasionally" or "temporarily" insufficiently staffed with ALJs such that the provisions of 5 U.S.C. § 3344 would permit USPTO to "borrow" ALJs from another agency. This conclusion is well-grounded in prevailing rules of statutory interpretation.

To begin with, the Supreme Court has made clear that when interpretating a statute, a court must look to "the ordinary public meaning of its terms at the time of its enactment." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 654 (2020). "After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives." *Id.* at 654-55. "As [the Supreme] Court has repeatedly stated, the text of a law controls over purported legislative intentions unmoored from any statutory text," and "the Court may not replace the actual text with speculation as to Congress' intent." *Corner Post, Inc. v. Bd. of Governors of Fed. Res. Sys.*, 603 U.S. 799, 815 (2024) (internal quotation marks omitted). After all, reliance on an unexpressed legislative "intent" would "displace the plain meaning of the law in favor of something lying beyond it." *Bostock*, 590 U.S. at 676. This is an approach the Supreme Court has "long rejected." *Id.*

In this case, 5 U.S.C. § 3344 does not sanction the unconditional and unrestrained "borrowing" of ALJs by any agency under any circumstances. Rather, the statute permits an agency to use ALJs selected by the Office of Personnel Management from other agencies if the agency in question "***occasionally*** or ***temporarily*** is ***insufficiently staffed*** with administrative law judges ***appointed under section 3105 of this title***" (emphasis added). The plain meaning of these words does not support an interpretation of § 3344 that would allow USPTO to entirely forego the

10

appointment of its own ALJs under 5 U.S.C. § 3105 and permanently opt to "borrow" them from other agencies like HUD.

To begin with, "occasionally" is defined as "occurring from time to time", "not habitual," "infrequent," "now and then," or "sometimes."  *See Allstate Ins. Co. v. Sylvester*, 2008 WL 2164657, *6 (D. Haw. May 21, 2008) (dictionary citation omitted). The word "occasionally" is "the very opposite of 'regularity.'" *Fonseca v. Wal-Mart Stores, E., LP*, 2019 WL 7371813, *4 (S.D. Fla. Sept. 23, 2019); *Mateo v. Empire Gas Co.*, 841 F.Supp.2d 574, 580-81 (D.P.R. 2012) (recognizing that the words "occasional" and "regular" are antonyms). "Temporarily" is likewise defined as "for a time (only); during a limited time." *United States v. McHugh*, 583 F.Supp.3d 1, 33 (D.D.C. 2022) (*citing* Oxford English Dictionary (2d ed. 1989)); *see also* TEMPORARY, Black's Law Dictionary (12th ed. 2024) (defining "temporary" as "Lasting for a time only; existing or continuing for a limited (usu. short) time; transitory.").

Accordingly, and before an agency can avail itself of another agency's ALJs under § 3344, it must "sometimes," "infrequently," and "not regularly," or, for a "limited time" be without sufficient ALJs *of its own* who have been appointed under § 3105. USPTO, however, is *regularly* and *permanently* without sufficient ALJs appointed under § 3105 because it has never had any to begin with. This "regular" absence of sufficient ALJs is the exact opposite of the "occasional" or "temporary" insufficient staffing required by the plain language of § 3344. Because it cannot establish that it is only "occasionally" or "temporarily" insufficiently staffed with ALJs appointed under § 3105, USPTO may not rely on § 3344 to justify ALJ Fernández-Pons' assignment to this matter in contravention of the statutory requirement that the person presiding over disciplinary proceedings be an "officer or employee" of USPTO. 35 U.S.C. § 32.

11

To the best of Plaintiff's knowledge, this issue has only been addressed by two district courts (in unreported decisions) since 5 U.S.C. § 3344 was enacted in 1966. *See Bolton v. Pritzker*, 2016 WL 4555467 (W.D. Wash. Sept. 1, 2016); *Welytok v. Director of the United States Patent & Trademark Office*, 2025 WL 3217842 (E.D. Va. Nov. 18, 2025). While both decisions rejected arguments that 5 U.S.C. § 3344 did not authorize ALJs from one agency to preside over hearings before another agency, the rationale of these decisions is distinguishable and ultimately unpersuasive.

In *Bolton*, the plaintiffs challenged the appointment of the Chief Administrative Law Judge of the U.S. Environmental Protection Agency ("EPA"), Susan Biro, to preside over a hearing before the National Oceanic and Atmospheric Administration ("NOAA"). Specifically, plaintiffs argued that ALJ Biro could not preside over NOAA hearings pursuant to § 3344 because "NOAA has used ALJ Biro and judges of the EPA for almost five years." *Bolton* at *7. Rejecting this argument, the district court held that "Section 3344 does not impose a limit on how long an agency can use an ALJ from another agency." *Id.* The district court also reasoned that "Congress's intent that ALJ's core duties and responsibilities be similar across agencies, and its creation of a statutory loan program, reflect its judgment that the role of an ALJ at one agency may appropriately be performed by an ALJ from another agency." *Id.*

The *Bolton* court's reasoning is unpersuasive for at least two reasons. First, Plaintiff Doe in this case is not arguing, as the *Bolton* plaintiffs were, that § 3344 places a limit on how long one agency may use ALJs "borrowed" from another agency. Rather, Plaintiff's position is that *before* an agency may use ALJs from another agency under § 3344, it must be "occasionally" or "temporarily" be without ALJs of its own appointed under § 3105. *Bolton* did not address this requirement, and failed to analyze the statutory text requiring that an agency be "occasionally" or

12

"temporarily […] insufficiently staffed" with ALJs appointed under § 3105. Being "permanently" insufficiently staffed with ALJs is the antithesis of being "occasionally" or "temporarily" insufficiently staffed. *Rosete v. Office of Personal Mgmt.*, 48 F.3d 514, 518 (Fed. Cir. 1995) (construing statutory term "temporary in its ordinary sense as the antithesis of permanent"); *Sohappy v. Hodel*, 911 F.2d 1312, 1319 n.3 (9th Cir. 1990) ("Generally 'permanent' connotes the opposite of 'temporary'"). Accordingly, *Bolton* provides no basis for overruling Plaintiff's arguments in this case.

Second, *Bolton* elevated the government's argument about Congress's "intent" when enacting § 3344 over the plain language of the statute itself. *See Bolton* at *7 (crediting the government's argument about Congress's "intent"). As discussed above, this is an approach the Supreme Court has "long rejected." *Bostock*, 590 U.S. at 676. Contrary to the Supreme Court's instructions, the *Bolton* court made no effort to analyze "the ordinary public meaning" of the text of § 3344 "at the time of its enactment." *Id.* at 654. Because it cannot be disputed that Supreme Court precedent requires this analysis, *Bolton's* failure to address the statutory text renders the decision largely unpersuasive.

Any reliance USPTO may place on *Welytok* is undermined for similar reasons. In that case, an attorney representing herself *pro se* challenged the USPTO Director's final decision to exclude her from practice before the agency. Among her many arguments, which the district court characterized as "somewhat unorganized," *Welytok* at *7, the petitioner claimed that § 3344 did not allow USPTO to "borrow" ALJs from HUD to preside over disciplinary proceedings "because the USPTO has used HUD ALJs for multiple years, that 'use' is neither occasional nor temporary, as the statute requires." *Id.* at *8. Relying on *Bolton*, *supra*, the Eastern District of Virginia rejected

13

this argument on the grounds that § 3344 does not "impose a time limit" on an agency's use of ALJs from another agency. *Id.*

Again, that is not Plaintiff's argument in this case. Here, Plaintiff correctly argues that the plain text of § 3344 makes the of "borrowing" ALJs contingent upon the borrowing agency "occasionally" or "temporarily" having an insufficient number of its own ALJs appointed under § 3105. This condition precedent is not satisfied by USTPO in this case because the agency has, on a permanent and/or regular basis, been without its own ALJs appointed under § 3105. *See Compl.* at Exh. A (FOIA Response) (Doc #: 1-1). Because the absence of ALJs appointed by USPTO under § 3105 is not "occasional" or "temporary," USPTO may not rely on § 3344 to "borrow" them from HUD, regardless of the length of the borrowing "term."

As in *Bolton*, the *Welytok* court also looked to legislative "intent" to conclude that, contrary to its plain text, § 3344 permits the unconditional borrowing of ALJs by any agency under any circumstance. As noted above, this reliance on Congress's extra-textual "intent" is undermined by the Supreme Court's precedents eschewing such an approach. *See Corner Post*, 603 U.S. at 815; *Bostock*, 590 U.S. at 676. Moreover, the specific citations to legislative history relied on by the *Welytok* court leave much to be desired. For example, *Welytok* relied on the 1941 final report of the Committee on Administrative Procedure appointed by the Attorney General to assess the "need for procedural reform in the field of administrative law."  ATTY. GEN. COMMITTEE ON ADMINISTRATIVE PROCEDURE, FINAL REPORT 1 (1941).[1] While this 1941 report did offer opinions on the desirability of exchanging hearing officers between agencies, *see id.* at 49, it is obviously not law and is not even part of the congressional record pertaining to the enactment of § 3344 twenty-five years later. Needless to say, a report that carries no independent legal authority and

---

[1] *Available at* https://www.regulationwriters.com/downloads/apa1941.pdf

14

predates the statute in question by a quarter of a century cannot overcome the plain language of §

3344 itself. *See Bostock*, 590 U.S. at 653 ("When the express terms of a statute give us one answer

and extratextual considerations suggest another, it's no contest.").

*Welytok* also relied on a House of Representatives report stating that the ALJ "loaner"

program "is intended to permit those [agencies] who do not need full-time examiners to borrow

them as needed <u>as well as</u> to aid those agencies which may become temporarily or occasionally

insufficiently staffed." *Welytok* at *8 (quoting H.R. Rep. No. 79-1890, at 280–81) (emphasis added

in the *Welytok* decision). The obvious problem with relying on such a statement is that this is not

the text Congress enacted in § 3344. Certainly, Congress could have passed a statute providing for

the sharing of ALJs with agencies "who do not need full-time examiners." But those words appear

nowhere in the text of § 3344. As written, § 3344 limits the "loaning" of ALJs to those agencies

that are "occasionally or temporarily" insufficiently staffed with ALJs of their own. If Congress

wanted to provide for the sharing of ALJs with agencies that did not need (and do not appoint)

ALJs of their own, it could have simply omitted the words "occasionally or temporarily" from §

3344. Congress included those words deliberately, and courts are bound to interpret § 3344 in a

manner that does not render them superfluous. *See Cooper Industries, Inc. v. Aviall Services, Inc.*,

543 U.S. 157, 166 (2004) ("Aviall's reading would render part of the statute entirely superfluous,

something we are loath to do."). After all, "[t]here is no reason why Congress would bother to

specify conditions" under which ALJs may be loaned by one agency to another "and at the same

time allow" the loaning of ALJs "absent those conditions." *Id.*

Finally, *Welytok* relied on a 1971 law review article by then-professor Antonin Scalia. *See*

Antonin Scalia, *The Hearing Examiner Loan Program*, 1971 DUKE L.J. 319 (1971). In pertinent

part, then-professor Scalia's article opined that "[t]he loan program has generally fulfilled the ...

15

expectation that it would prevent the hiring of hearing examiners by agencies with insufficient work to employ them full time." Of course, then-professor Scalia's article is not the law, and to the extent it attempts to supplement the existing text of § 3344 by relying on Congress's extra-textual "expectations," it would have no doubt been criticized by *Justice* Scalia in his later decisions at the Supreme Court (which, unlike his pre-judicial articles, *do* have the force of law). *See, e.g.*, *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) ("We have never accorded dispositive weight to context shorn of text.") (Scalia, J.); *Zedner v. United States*, 547 U.S. 489, 511 (2006) ("the use of legislative history is illegitimate and ill advised in the interpretation of any statute— and especially a statute that is clear on its face.") (Scalia, J., concurring in part and concurring in the judgment); *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) ("The greatest defect of legislative history is its illegitimacy. We are governed by laws, not by the intentions of legislators.") (Scalia, J., concurring).

In sum, and to the extent both *Bolton* and *Welytok* give short shrift to the words Congress enacted in § 3344 and rely instead on extra-textual findings of "intent" and "purpose," these cases are not persuasive in light of the Supreme Court's mandate that statutory interpretation "begins and ends with the text." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 676 (2020). In this case, that text requires an agency to be "occasionally or temporarily" insufficiently staffed with ALJs of its own before it can "borrow" ALJs from another agency. Because USPTO is regularly and permanently without ALJs appointed under § 3105, it may not rely on § 3344 to "borrow" ALJ Fernández-Pons to preside over these proceedings in contravention of 35 U.S.C. § 32.[2]

---

[2] Of note, Plaintiff Doe filed a Motion to Dismiss in the Disciplinary Case, arguing *inter alia* that 5 U.S.C. § 3344 did not authorize the USPTO to "borrow" ALJs from other agencies for purposes of presiding over attorney disciplinary proceedings. Although ALJ Fernández-Pons denied

**4.  Plaintiff is Not Required to Exhaust Administrative Remedies.**

Finally, Plaintiff anticipates that the government may respond to his Complaint and Motion for Preliminary Injunction by arguing that Plaintiff's challenges must be channeled through the review scheme established by 35 U.S.C. § 32, which provides for review of the USPTO Director's final determination in attorney disciplinary proceedings by the U.S. District Court for the Eastern District of Virginia.

In *Axon Ent., Inc. v. Fed. Trade Comm.*, 598 U.S. 175, 185 (2023), the Supreme Court recognized that "a special statutory review scheme, […], may preclude district courts from exercising jurisdiction over challenges to federal agency action." However, "a statutory review scheme of that kind does not necessarily extend to every claim concerning agency action." *Id.* If, for example, a plaintiff's claims are not "the type Congress intended to be reviewed within this statutory structure," they may be presented to a district court outside any special statutory review scheme. *Id.* at 186. *Axon* identified "three considerations designed to aid in that inquiry." *Id.* First, could precluding district court jurisdiction foreclose all meaningful judicial review of the claim? *Id.* Next, is the claim wholly collateral to the statute's review provisions? *Id.* Finally, is the claim outside the agency's expertise? *Id.* "When the answer to all three questions is yes, we presume that Congress does not intend to limit jurisdiction." *Id.* (cleaned up).

In this case, the answer to all three questions identified by the Supreme Court in *Axon* is "yes." First, precluding this Court's review of the legality of the prosecution of Plaintiff's Disciplinary Case before ALJ Fernández-Pons would foreclose all meaningful judicial review. As in *Axon*, Plaintiff Doe asserts "a here-and-now injury of subjection to an [illegally] structured

---

Plaintiff Doe's Motion to Dismiss, he nonetheless held that "5 U.S.C. § 3344 has no bearing on this matter."

decisionmaking process." *Axon*, 598 U.S. at 192. This harm "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id.* at 191. This is because, as in *Axon*, Plaintiff's claims in this case are not about the merits of the Disciplinary Case against him, such that they could be redressed through a favorable decision on appeal. Rather, "[t]he claim, […], is about subjection to an illegitimate proceeding, led by an illegitimate decisionmaker." *Id.* Appellate review following a hearing before ALJ Fernández-Pons "can do nothing" to provide effective relief, insofar as "[a] proceeding that has already happened cannot be undone." *Id.* at 191. Thus, "[a] judicial review of [Plaintiff's] structural […] claims would come too late to be meaningful." *Id.*

Next, Plaintiff Doe's claims in this case are wholly collateral to the review scheme established by 35 U.S.C. § 32. This is because Plaintiff is "challenging the [USPTO's] power to proceed [before ALJ Fernández-Pons] at all, rather than the actions taken in the agency proceedings." *Axon*, 598 U.S. at 192. In other words, Plaintiff Doe's "claims do not relate to the subject of the enforcement action[]." *Id.* at 193. "The claims, in sum, have nothing to do with the enforcement-related matters […]. Because that is so, [Plaintiff's] claims are 'collateral' to any [USPTO] orders or rules from which review might be sought." *Id.*

Finally, Plaintiff's claims in this case are outside the scope of the USPTO's expertise. Axiomatically, the USPTO's expertise is patent and trademark issues (none of which are implicated by this case). As the Supreme Court reaffirmed in *Axon*, *"*agency adjudications are generally ill suited to address structural […] challenges—like those maintained here." *Axon*, 598 U.S. at 195.

Accordingly, any argument that Plaintiff's claims must be channeled through the review scheme established by 35 U.S.C. § 32 should be rejected, and Plaintiff should be allowed to present

his structural claims challenging the legitimacy of the proceedings before ALJ Fernández-Pons in this Court.

### C. Plaintiff Will Suffer Irreparable Harm Absent an Injunction.

As to the irreparable harm element, *Axon* is once more instructive. If Plaintiff Doe is required to submit to illegally structured disciplinary proceedings before ALJ Fernández-Pons, he will be subject to "a here-and-now injury of subjection to an [illegally] structured decisionmaking process." *Axon*, 598 U.S. at 192. This harm "is impossible to remedy once the proceeding is over, which is when appellate review kicks in." *Id.* at 191. Accordingly, the harm to which Plaintiff Doe will be subject absent an injunction from this Court is, by definition, "irreparable." *See Seton v. Natl. Labor Relations Bd.*, 756 F.Supp.3d 405, 409 (W.D.Tex. 2024) ("Ascension is currently scheduled for a hearing before an NLRB ALJ on October 8, 2024. This Court finds that subjecting Ascension to a hearing before a potentially unconstitutionally protected agency official satisfies the irreparable harm requirement."); *Space Expl. Techs., Corp. v. Bell*, 701 F.Supp.3d 626, 634 (S.D.Tex. 2023) ("Plaintiff is being subjected to unconstitutional agency authority, which is impossible to remedy once the proceeding is over.").

### D. No Third Party Will Suffer Substantial Harm if an Injunction is Issued, and an Injunction is in the Public Interest.

Where the government is a defendant, the harm to the opposing party and public interest factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). The government suffers no cognizable harm from stopping "the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Nor would an injunction preventing unlawful agency action "disserve the public interest." *Louisiana v. Biden*, 55 F.4th 1017, 1022 (5th Cir. 2022). The public has a profound interest in ensuring that government agencies operate in

19

accordance with statutes passed by Congress. Because no third party will be harmed and the public interest would be well-served by an injunction, Plaintiff's Motion should be granted.

## III. CONCLUSION

Pursuant to the argument and authorities cited herein, this Honorable Court should enjoin Defendants from prosecuting Plaintiff's Disciplinary Case before ALJ Fernández-Pons pending a full determination of the above-captioned action on its merits.

Dated: July 23, 2026

Respectfully submitted,

/s/ *Daniel J. Rudary*
Daniel J. Rudary (0090482)
**BRENNAN, MANNA & DIAMOND, LLC**
75 E. Market Street
Akron, OH 44308
Telephone: (330) 253-5060
Facsimile: (330) 253-1977
E-mail: djrudary@bmdllc.com

Michael E. McCabe, Jr.
(*Pro Hac Vice* Motion Pending)
**MCCABE ALI LLP**
9233 Fall River Lane
Potomac, Maryland 20854
Telephone: 301.798.1110
Facsimile: 310.828.8181
Email: mike@mccabeali.com

*Counsel for Plaintiff John Doe*

20

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing *Motion for Preliminary Injunction* will be delivered to the Clerk of Court for service upon the below-listed parties with the *Summons* and *Complaint* via certified U.S. Mail in accordance with Northern District of Ohio Local Rule 4.2(a):

United States Patent and Trademark Office
Mail Stop Office of the General Counsel
Director of the U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Kimberly C. Kelleher
Mail Stop OED
Director of the U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

John A. Squires
Mail Stop Office of the General Counsel
Director of the U.S. Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Office of the United States Attorney for the Northern District of Ohio
Attn: Civil Process Clerk
801 West Superior Avenue, Suite 400
Cleveland, OH 44113-1852

Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

/s/ *Daniel J. Rudary*
*Counsel for Plaintiff*