PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | CASE NO. 4:26CV1715 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| UNITED STATES PATENT AND | ) | |
| TRADEMARK OFFICE, *et al.*, | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | [Resolving ECF No. 10] |

Pending is Plaintiff John Doe's Motion for Preliminary Injunction (ECF No. 10), filed on July 23, 2026. The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law. The Court has also considered the arguments of counsel offered at the hearing on the record held on September 2, 2026. For the reasons that follow, this action is dismissed for lack of subject matter jurisdiction. Assuming *arguendo* that the Court has subject matter jurisdiction, the Court denies ECF No. 10.

## I. Introduction

Plaintiff moves the Court for an order preliminarily enjoining Defendants United States Patent and Trademark Office ("USPTO"), Kimberly C. Kelleher ("Kelleher") in her official capacity as Director of the USPTO Office of Enrollment and Discipline, and John A. Squires ("Squires") in his official capacity as Under Secretary of Commerce for Intellectual Property and Director of the USPTO ("Federal Defendants") from proceeding with the prosecution of the

attorney disciplinary action against Plaintiff now ongoing in the USPTO, until after the resolution on the merits of the above-entitled civil action.

## II. Stipulated Facts

Stipulated facts[1] follow:

1. Plaintiff John Doe is a natural person, a citizen of the State of Ohio, and a resident of the Northern District of Ohio. Plaintiff is proceeding pseudonymously in this action. *See* Marginal Order (ECF No. 12).

2. Plaintiff is a registered patent attorney authorized to practice before the USPTO.

3. The USPTO is an agency within the U.S. Department of Commerce, with its principal place of business at 600 Dulany Street, Alexandria, Virginia 22314.

4. Kelleher is the Director of the USPTO's Office of Enrollment and Discipline ("OED").

5. Squires is the Under Secretary of Commerce for Intellectual Property and Director of the USPTO.

6. On August 12, 2025, the USPTO's OED filed a formal "Complaint and Notice of Hearing Under 35 U.S.C. § 32" against Plaintiff (the "Disciplinary Case").

7. The Disciplinary Case seeks an order suspending and/or excluding Plaintiff from practice before the USPTO, based on allegations that Plaintiff violated the USPTO Rules of Professional Conduct.

8. Kelleher, then serving as Acting OED Director, signed the disciplinary Complaint.

---

[1] *See* Joint Stipulation of Undisputed Facts (ECF No. 27).

9. The OED filed its disciplinary Complaint by transmitting it via email to the U.S. Department of Housing and Urban Development ("HUD") Office of Hearings and Appeals. The Complaint stated that it was "filed pursuant to 37 C.F.R. §§ 11.32 and 11.34."

10. The Disciplinary Case was assigned to Administrative Law Judge ("ALJ") Alexander Fernández-Pons for further proceedings, including conducting a hearing and issuing an initial decision.

11. ALJ Fernández-Pons is an employee of HUD.

12. On September 25, 2018, Wilbur L. Ross, Jr. was the Secretary of Commerce.

13. On September 25, 2018, Secretary Ross signed an "Appointment of Administrative Law Judges." Exhibit 1 (ECF No. 27-1) is a true and accurate copy of Secretary Ross's Appointment of Administrative Law Judges.

14. Secretary Ross's Appointment of ALJs appointed, among others, ALJ Fernández-Pons (then, ALJ Fernández) "for the purpose of performing all adjudicatory functions which are permitted by Title 35, Ch. 3, to be performed by an Administrative Law Judge."

15. Title 35, Ch. 3 of the United States Code includes 35 U.S.C. § 32.

16. Since at least May 1999, the USPTO has used ALJs who are employees of other agencies to conduct USPTO disciplinary proceedings. *See, e.g.*, https://foiadocuments.uspto.gov/oed/D1999-02_Barron.pdf.

17. Since at least May 1999, ALJs who are employees of other agencies have conducted hearings and issued numerous published initial decisions in USPTO disciplinary proceedings. *See* https://foiadocuments.uspto.gov/oed/.

18. Prior to November 29, 1999, the text of 35 U.S.C. § 32 stated as follows:

> The Commissioner may, after notice and opportunity for a hearing, suspend or exclude, either generally or in any particular case, from further practice before the

> Patent and Trademark Office, any person, agent, or attorney shown to be incompetent or disreputable, or guilty of gross misconduct, or who does not comply with the regulations established under section 31 of this title, or who shall, by word, circular, letter, or advertising, with intent to defraud in any manner, deceive, mislead, or threaten any applicant or prospective applicant, or other person having immediate or prospective business before the Office. The reasons for any such suspension or exclusion shall be duly recorded. The United States District Court for the District of Columbia, under such conditions and upon such proceedings as it by its rules determines, may review the action of the Commissioner upon the petition of the person so refused recognition or so suspended or excluded.

19. In 1999, 37 C.F.R. 10.139, the then-governing USPTO regulation regarding hearing officers presiding over USPTO disciplinary proceedings, provided (among other things): "An administrative law judge, appointed under 5 U.S.C 3105, shall conduct disciplinary proceedings as provided by this part."

20. On November 29, 1999, as part of the American Inventors Protection Act of 1999 (Public Law 106-113, 113 Stat. 1501), Congress amended 35 U.S.C. § 32 by, among other things, inserting before the last sentence the following: "The Director [of the USPTO] shall have the discretion to designate any attorney who is an officer or employee of the United States Patent and Trademark Office to conduct the hearing required by this section."

21. In 2008, the USPTO's regulation regarding hearing officers presiding over USPTO disciplinary proceedings was amended, as 37 C.F.R. § 11.39, to provide (among other things): "A hearing officer, appointed by the USPTO Director under 5 U.S.C. 3105 or 35 U.S.C. 32, shall conduct disciplinary proceedings as provided by this Part."

22. During notice-and-comment period for the USPTO's rulemaking process amending the hearing officer regulation in 2008, the USPTO observed (among other things):

> Section 11.39: Section 11.39 is added to provide for a hearing officer, the appointment and responsibilities of the hearing officer, and review of a hearing officer's interlocutory orders and stays. Section 11.39, in essence, continues the provisions of former § 10.139, except as noted in the following discussion.

> Section 11.39(a), in addition to providing for the appointment of a hearing officer by the USPTO Director under 5 U.S.C. 3105, also provides for a hearing officer appointed under 35 U.S.C. 32. The hearing officer conducts the disciplinary proceedings.
>
> Section 11.39(b) provides that the hearing officer be independent of improper influence by requiring that the officer "not be subject to first level or second level supervision by the USPTO Director or his or her designee," "not be subject to supervision of the person(s) investigating or prosecuting the case," "not be an individual who has participated in any manner in the decision to initiate the proceedings," and "not have been employed under the immediate supervision of the practitioner." The hearing officer must be admitted to practice law and have suitable experience and training to conduct the hearing, reach a determination, and render an initial decision in an equitable manner. . . .

*Changes to Representation of Others Before the United States Patent and Trademark Office*, 73 Fed. Reg. 47650-01, *47660-61 (Aug. 14, 2008).

23. During the notice-and-comment period for the USPTO's rulemaking process amending the hearing officer regulation in 2008, the following exchange occurred among the public comments and USPTO responses:

> Comment 47: Two comments urged, presumably with regard to § 11.39, that the USPTO Director adopt a policy of always appointing administrative law judges as hearing officers to maintain the requisite independence of the process.
>
> Response: The Office appreciates and understands the need for the hearing officer to be independent. The Patent Statute provides that the USPTO "Director shall have the discretion to designate any attorney who is an officer or employee of the United States Patent and Trademark Office to conduct the hearing required by this section." See 35 U.S.C. 32. Accordingly, the provisions of § 11.39(a) have been written to be consistent with the statute. The USPTO's current practice is to use administrative law judges from EPA as the hearing officer in disciplinary matters; however, the statute does not require administrative law judges from outside the agency be employed. Furthermore, a hearing officer cannot be subject to first level or second level supervision by either the USPTO Director or OED Director, or his or her designee. See § 11.39(b). Thus, where an employee of the Office is appointed under 35 U.S.C. 32 to conduct a disciplinary proceeding, the employee cannot be subject to first level or second level supervision by either the USPTO Director or OED Director, or his or her designee.

(4:26CV1715)

*Changes to Representation of Others Before the United States Patent and Trademark Office*, 73 Fed. Reg. 47650-01, *47678 ((Aug. 14, 2008).

24. In 2021, the USPTO's regulation regarding hearing officers presiding over USPTO disciplinary proceedings, 37 C.F.R. § 11.39, was amended to provide (among other things):

> Designation. A hearing officer designated by the USPTO Director shall conduct disciplinary proceedings as provided by this part.
>
> * * *
>
> A hearing officer designated in accordance with paragraph (a) of this section shall be either an administrative law judge appointed under 5 U.S.C. 3105 or an attorney designated under 35 U.S.C. 32. The hearing officer shall possess suitable experience and training in conducting hearings, reaching a determination, and rendering an initial decision in an equitable manner.

37 C.F.R. §§ 11.39(a), (b)(4).

25. The USPTO and HUD entered into an "Interagency Agreement Between The Department of Housing and Urban Development And The United States Patent and Trademark Office For Performance of Reimbursable Work" (USPTO IAA No. 13129960-0000-000), signed March 27, 2013 ("2013 Interagency Agreement"). Exhibit 2 (ECF No. 27-2) is a true and accurate copy of the 2013 Interagency Agreement.

26. The 2013 Interagency Agreement states, in part:

> The authority for USPTO and HUD to enter into this Agreement is pursuant to 35 U.S.C. § 2(b)(5). It provides that USPTO may use, with their consent, services, equipment, personnel, and facilities of other departments, agencies, and instrumentalities of the Federal Government on a reimbursable basis, and cooperate with such other departments, agencies, and instrumentalities in the establishment and use of services, equipment and facilities of USPTO.

ECF No. 27-2 at PageID #: 189, ¶ III.

27. On September 23, 2022, David Berdan, then General Counsel for the USPTO, acting on delegated authority from Katherine K. Vidal, then Under Secretary of Commerce for Intellectual Property and Director of the USPTO, executed a document titled, "Designation of

Hearing Officers" (hereinafter, "Designation"). The Designation identified ALJs J. Jeremiah Mahoney of HUD, Alexander Fernández-Pons of HUD, and Michael G. Young and John Lewis of the Federal Mine Safety & Health Review Commission ("FMSHRC") as persons "designated to serve as hearing officers to conduct disciplinary proceedings as provided by 37 C.F.R. Part 11." Exhibit 3 (ECF No. 27-3) is a true and accurate copy of the Designation.

28. On November 22, 2024 and January 6, 2025, the General Counsel and the Acting General Counsel for the USPTO, respectively, acting on delegated authority from the Under Secretary of Commerce for Intellectual Property and Director of the USPTO, executed Designations of Hearing Officers for three (3) additional ALJs, who were employees of the U.S. Department of Environmental Protection Agency ("EPA"), to serve as USPTO disciplinary hearing officers. *See* Exhibit 4 (ECF No. 27-4).

29. The USPTO and HUD entered into an "Interagency Agreement Between The Department of Housing and Urban Development And The United States Patent and Trademark Office For Performance of Reimbursable Work" (USPTO IAA No. 24129006-0000-000), signed February 1, 2024 ("2024 Interagency Agreement"). ALJ Fernández-Pons signed the 2024 Interagency Agreement on behalf of HUD. Exhibit 5 (ECF No. 27-5) is a true and accurate copy of the 2024 Interagency Agreement.

30. The 2024 Interagency Agreement states, in part:

> The authority for USPTO and HUD to enter into this Agreement includes 35 U.S.C. § 2(b)(5), which provides that USPTO may use, with their consent[,] services, equipment, personnel, and facilities of other departments, agencies, and instrumentalities of the Federal Government on a reimbursable basis, and cooperate with such other departments, agencies, and instrumentalities in the establishment and use of services, equipment and facilities of USPTO.

ECF No. 27-5 at PageID #: 197, ¶ II.

31. The USPTO has entered into similar Interagency Agreements with other agencies, including the EPA and FMSHRC.

32. On September 25, 2024, Latonia J. Page, Deputy Associate Director of the United States Office of Personnel Management, transmitted correspondence to William R. Covey, then Deputy General Counsel and Director of OED, approving the continuation of the "loan" of ALJs from HUD to the USPTO for purposes of adjudicating disciplinary proceedings against those registered to practice before the USPTO "[u]nder authority of 5 U.S.C. § 3344 and 5 CFR 930.208." Exhibit 6 (ECF No. 27-6) is a true and accurate copy of this correspondence.

33. On the same day, Ms. Page transmitted substantially identical correspondence to Mr. Covey approving the continuation of the "loan" of ALJs from the EPA to the USPTO for purposes of adjudicating disciplinary proceedings against those registered to practice before the USPTO "[u]nder authority of 5 U.S.C. § 3344 and 5 CFR 930.208." Exhibit 7 (ECF No. 27-7) is a true and accurate copy of this correspondence.

34. Also on the same day, Ms. Page transmitted correspondence to Mr. Covey concerning the "loan" of ALJs from FMSHRC to the USPTO for purposes of adjudicating disciplinary proceedings against those registered to practice before the USPTO "[u]nder authority of 5 U.S.C. § 3344 and 5 CFR 930.208." That correspondence indicated, among other things, that FMSHRC "has agreed to only complete one USPTO case . . . which is currently pending the decision being issued. Additionally, FMSHRC is no longer able to hear any new USPTO cases going forward." Exhibit 8 (ECF No. 27-8) is a true and accurate redacted copy of this correspondence.

35. On September 18, 2025, Andrew Paulmeno, Deputy Assistant Director of the United States Office of Personnel Management, transmitted two pieces of correspondence to William R.

Covey, then Deputy General Counsel and Director of OED, approving the continuation of the "loan" of administrative law judges from both HUD and EPA to the USPTO for purposes of adjudicating disciplinary proceedings against those registered to practice before the USPTO "[u]nder authority of 5 U.S.C. § 3344 and 5 CFR 930.208." Exhibit 9 (ECF No. 27-9) is a true and accurate copy of this correspondence.

36. Michael McCabe, one of Plaintiff's attorneys in the Disciplinary Case and in the present case, submitted a FOIA request (No. F-26-00132) to the USPTO by email on December 9, 2025, seeking the following:

> (a) "Documents identifying the names of any current Administrative Law Judges (ALJs) who are employed by the USPTO and were appointed pursuant to 5 U.S.C. 3105, including the date on which each was appointed."
>
> (b) "Documents identifying the names of any ALJs of the USPTO appointed pursuant to 5 USC 3105 at any time since 2000, regardless of whether the ALJs are still employees of the USPTO."

Exhibit 10 (ECF No. 27-10) is a true and accurate copy of Mr. McCabe's FOIA request (No. F-26-00132).

37. By letter dated February 24, 2026, the USPTO FOIA Office responded that "[t]he USPTO conducted a search and identified no records responsive to your request," and stated, "The USPTO does not employ Administrative Law Judges (ALJs)." Exhibit 11 (ECF No. 27-11) is a true and accurate copy of the February 24, 2026 response by the USPTO's FOIA Office.

38. ALJ Fernandez-Pons in the Disciplinary Case ordered that the Answer be filed on October 14, 2025. On October 1, 2025, however, the ALJ issued a Notice and Stay of Proceedings stating that "due to lack of appropriations from HUD on and after October 1, 2025, HUD and OHA [the HUD Office of Hearings and Appeals] are closed for lack of funds" during

the 2025 federal government shutdown. As a result, Plaintiff's matter was indefinitely stayed during the lapse in appropriations.

39. On November 25, 2025, once the shutdown ended, ALJ Fernandez-Pons issued in the Disciplinary Case an Order Lifting Stay and Revising Deadline to File Answer until January 16, 2026.

40. On January 16, 2026, Plaintiff filed an Answer to the disciplinary Complaint raising eleven affirmative defenses, and filed a Motion to Dismiss raising jurisdictional and constitutional arguments, including arguments that the hearing officer must be an officer or employee of the USPTO under 35 U.S.C. § 32 and that 5 U.S.C. § 3344 does not authorize the USPTO's use of a HUD ALJ.

41. By order dated May 8, 2026 (but served on May 11, 2026), ALJ Fernández-Pons denied Plaintiff's Motion to Dismiss. Exhibit 12 (ECF No. 27-12) is a true and accurate redacted copy of ALJ Fernández-Pons's order denying Plaintiff's motion to dismiss.

42. A hearing was originally scheduled for June 2, 2026. By a Notice of Order and Revised Deadlines dated May 28, 2026, the hearing was continued to October 19, 2026.

43. From May 29, 2026 to June 10, 2026, the parties to the Disciplinary Case negotiated an agreed-upon revised schedule involving discovery, prehearing deadlines, and a different hearing date, and reached agreement on these points.

44. On June 10, 2026, the parties to the Disciplinary Case filed a Joint Motion to Revise Schedule signed by counsel for both parties. Exhibit 13 (ECF No. 27-13) is a true and accurate redacted copy of the Joint Motion to Revise Schedule.

45. By an Order Granting in Part Joint Motion to Revise Schedule dated June 16, 2026, ALJ Fernández-Pons rescheduled the hearing for October 14-16, 2026.

46. On July 23, 2026, Plaintiff filed his Complaint for Declaratory and Injunctive Relief (ECF No. 1) and his Motion for Preliminary Injunction (ECF No. 10) in this Court.

47. Plaintiff's Motion seeks to preliminarily enjoin the Federal Defendants from proceeding with the Disciplinary Case before ALJ Fernández-Pons pending resolution of the case at bar on the merits.

## III. Law and Analysis

Nearly a year after disciplinary proceedings commenced against him in the USPTO, Plaintiff filed this action challenging the validity of ALJ Fernandez-Pons' designation to preside over the disciplinary proceedings as being in violation of 35 U.S.C. § 32 (authorizing USPTO to discipline malfeasant practitioners) and 5 U.S.C. § 3344 (providing a mechanism for an agency to "borrow" ALJs).[2] Plaintiff seeks a preliminary injunction, hoping to enjoin the hearing scheduled for next month because, he believes that, the designated ALJ does not have legal authority to preside over the prosecution of the disciplinary case against him.

Relevant regulations provide that, after an ALJ issues a decision following a disciplinary hearing, a party may appeal to the USPTO Director. 37 C.F.R. §§ 11.55, 11.56(a). If dissatisfied with the decision of the USPTO's Director, a party may request reconsideration of that decision by means of an appeal made within 20 days. 37 C.F.R. § 11.56(c). A request for reconsideration stays the effective date of the order of discipline in the final decision. *Id.* If no party appeals the ALJ's initial decision, it "will, without further proceedings, become the final decision of the

[2] While the parties do not make clear when the proceedings against Plaintiff began, the ALJ's decision denying dismissal and stay indicates that the complaint in the USPTO was filed August 12, 2025. *See* ECF No. 27-12 at PageID #: 211. There is no dispute, however, that the disciplinary proceedings are ongoing in the USPTO; and that, through counsel, Plaintiff has actively participated in those disciplinary proceedings. *See* Stipulation Nos. 40-44.

USPTO Director 30 days from the date of the decision of the hearing officer." 37 C.F.R. § 11.54(d). The subject of the disciplinary proceeding may seek judicial review of a final order of the Director by filing a petition for review in the United States District Court for the Eastern District of Virginia. 35 U.S.C. § 32.

**A. Subject Matter Jurisdiction**

The Federal Defendants argue that the Court lacks subject matter jurisdiction over the Complaint for Declaratory and Injunctive Relief (ECF No. 1). According to Defendants, instead of obtaining judicial review of his challenges to the USPTO's administrative proceedings *now*, Plaintiff is limited to securing judicial review *later* and in the U.S. District Court for the Eastern District of Virginia.[3] The process provided in 37 C.F.R. § 11.2(e) permits any party "dissatisfied with any action or notice of any employee of the [OED] during or at the conclusion of a disciplinary investigation" to petition the OED Director, then the USPTO Director; and after a final decision has been reached, a federal court. There is *de novo* review by the OED Director, USPTO Director, and federal court.

Plaintiff acknowledges that 35 U.S.C. § 32 "is a specific statutory rule governing [USPTO] disciplinary proceedings." Plaintiff's Memorandum in Support (ECF No. 10) at PageID #: 59. He objects, however, to its plain language that unambiguously vests judicial review of USPTO disciplinary actions with the U.S. District Court of the Eastern District of Virginia. Nevertheless, "[c]ongress, through [3]5 U.S.C. § 32, intended to channel all Article III review of PTO disciplinary proceedings to a single court . . . and only *after* the conclusion of the

---

[3] The Court mentions, without deciding, that it appears that, given the ALJ's denial of Plaintiff's motion to dismiss, Plaintiff's structural challenge to the USPTO's disciplinary proceeding may be reviewed by the district court for the Eastern District of Virginia, at the conclusion of those proceedings, regardless of whether the ultimate disciplinary decision is adverse.

administrative proceedings." *Swyers v. U.S. Pat. & Trademark Off.*, No. 1:16-CV-15, 2016 WL 7042943, at *8 (E.D. Va. May 27, 2016) (emphasis in original). "It is fairly discernible from § 32 that Congress intended to preclude district court jurisdiction over pre-enforcement challenges to, or collateral attacks on, PTO disciplinary proceedings." *Id.* at *9 (footnote omitted). The U.S. District Court for the Eastern District of Virginia "is the *exclusive* forum for review of action taken by the [Director of the USPTO] under 35 U.S.C. § 32." *Franchi v. Manbeck*, 972 F.2d 1283, 1288 (Fed. Cir. 1992) (analyzing the former version of § 32, which reserved jurisdiction with the U.S. District Court for the District of Columbia) (emphasis in original). While § 32 does not use the word "exclusive" when referencing the district court for the Eastern District of Virginia, it is the only court mentioned and that mention is without qualification.[4] It is well settled that when a statute so vests jurisdiction in a particular court to review administrative actions, it cuts off original jurisdiction in all other courts in cases covered by that statute. *See Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 77 (D.C. Cir. 1984) (collecting cases). "[N]othing in [35 U.S.C. § 32, however,] restricts the Eastern District of Virginia's ability to adjudicate a constitutional claim that was properly raised before the [USPTO]." *LegalForce RAPC Worldwide PC v. USPTO*, No. CV-24-03437-PHX-JJT, 2025 WL 1235576, at *8 (D. Ariz. April 29, 2025). Because Plaintiff has been subject to the designated ALJ and agency process that led to the filing of the instant federal case, "there is no reason that the Eastern District of Virginia cannot provide meaningful judicial review through the

---

[4] "The United States District Court for the Eastern District of Virginia, under such conditions and upon such proceedings as it by its rules determines, may review the action of the Director upon the petition of the person so refused recognition or so suspended or excluded."

administrative channel that Congress created for review of USPTO disciplinary decisions." *Id.* at *9.

The above is sufficient to divest this Court of subject matter jurisdiction over the instant matter. Stated differently: the answer to the first question in *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 186 (2023), is "no" – precluding district court jurisdiction *does not* foreclose all meaningful judicial review.

Assuming *arguendo* that the Court has subject matter jurisdiction, the Court denies ECF No. 10 on the merits for the reasons that follow.

**B. Preliminary Injunction Standard**

"[A] preliminary injunction is an 'extraordinary and drastic remedy.'" *Kerwin on behalf of Nat'l Lab. Rels. Bd. v. Trinity Health Grand Haven Hosp.*, 174 F.4th 942, 949 (6th Cir. 2026) (citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "After weighing the four factors against one another, a court may grant a preliminary injunction only if a plaintiff has made 'a clear showing that [it] is entitled to such relief.'" *PCC Airfoils, LLC v. Daugherty*, 176 F.4th 509, 513 (6th Cir. 2026) (alteration in original) (quoting *Winter*, 555 U.S. at 22).

A plaintiff, however, may not proceed if he has "no likelihood of success on the merits." *Id.* (citation omitted). And the irreparable harm factor is "indispensable." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019). "[E]ven the strongest showing on the other three factors" will not overcome a lack of irreparable harm because "[i]f the plaintiff isn't facing imminent and irreparable injury, there's no need to grant relief *now* as opposed to at the end of

the lawsuit." *Id.* at 326-27 (emphasis in original). To overcome this threshold, the plaintiff must demonstrate "the existence of an irreparable injury" that is "'both certain and immediate,' not 'speculative or theoretical.'" *Id.* at 327 (citation omitted). A plaintiff need not, however, establish this factor by "clear and convincing evidence." *PCC Airfoils*, 176 F.4th at 513. Nor does the "clear showing" required by *Winter* apply to the irreparable harm (or any other) factor individually. *Id.* at 514. This "phrase clarifies that, on balance, the four preliminary injunction factors must clearly weigh in the plaintiff's favor to qualify for injunctive relief." *Id.* "No more; no less." *Tascarella v. Aptiv US Svcs. Gen. P'ship*, No. 26-3101, 2026 WL 2243787, at * (6th Cir. Aug. 4, 2026).

**1. Likelihood of Success**

Plaintiff is unlikely to succeed on the merits of his statutory argument. If a plaintiff demonstrates "no likelihood of success on the merits," there is nothing left to balance, and injunctive relief must be denied regardless of the remaining factors. *PCC Airfoils*, 176 F.4th at 513 (quoting *Higuchi Int'l Corp. v. Autoliv ASP, Inc.*, 103 F.4th 400, 409 (6th Cir. 2024)).

**a.**

Plaintiff claims that his disciplinary proceedings before the USPTO are invalid because a non-USPTO "employee," *i.e.*, an ALJ employed by HUD rather than the USPTO, is the designated hearing officer. In so arguing, Plaintiff relies on the following statement in 35 U.S.C. § 32: "The Director shall have the discretion to designate *any attorney who is an officer or employee* of the United States Patent and Trademark Office to conduct the hearing required by this section." (Emphasis added). Plaintiff argues that this provision requires the Director to designate only an officer or employee of the USPTO. *See* ECF No. 10 at PageID #: 52; Plaintiff's Reply Memorandum (ECF No. 26) at PageID #: 160.

Plaintiff reads the statute too narrowly and contrary to its plain language. When called upon to interpret a statute, courts are required "to give effect to congressional intent." *Donovan v. FirstCredit, Inc*. 983 F.3d 246, 252-53 (6th Cir 2020) (citing *United States v. Am. Trucking Ass'ns*, 310 U.S. 534, 542 (1940) ("In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress."). "This inquiry begins—and sometimes ends—with 'the plain language of the statute.'" *Id.* at 253 (quoting *The Ltd., Inc. v. Comm'r.*, 286 F.3d 324, 332 (6th Cir. 2002)). "If the language of the statute is clear, the court applies the statute as written." *In re Corrin*, 849 F.3d 653, 657 (6th Cir. 2017) (citation omitted). "Where, however, 'the language is ambiguous or leads to an absurd result,' courts may rely on extra-textual sources, such as legislative history or administrative guidance, to interpret a statute. *Id.* (legislative history); *see Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1037-38 (6th Cir. 2018) (administrative guidance)." *Donovan*. 983 F.3d at 253.

In this case, the language Plaintiff misreads is plain, unambiguous and easily understood. Since its modification in November 1999, the USPTO has been able to designate "an officer or employee" to conduct its hearings. Section 32 does not mandate the appointment of *only* an officer or employee of the USPTO, but rather plainly provides for the appointment of *an* officer or employee at the *discretion* of the Director. Even if the language of 35 U.S.C. § 32 were not sufficiently clear (and it is), Plaintiff need only look to the related regulation, *i.e.*, 37 C.F.R. § 11.39, which makes clear two requirements: (1) "[a] hearing officer *designated* by the USPTO Director shall conduct disciplinary proceedings" and (2) the hearing officer "shall be either an administrative law judge appointed under 5 U.S.C. 3105 or an attorney designated under 35 U.S.C. 32." 37 C.F.R. § 11.39 (a) and (b)(4) (emphasis added). The clarity of this language alone, robs Plaintiff of the likelihood of succeeding on the merits.

The Federal Circuit has repeatedly recognized the broad discretion granted the USPTO to govern the proceedings before it. *See, e.g.*, *Lacavera v. Dudas*, 441 F.3d 1380, 1383 (Fed. Cir. 2006) (finding that "[u]nder 35 U.S.C. § 2(b)(2), the PTO has broad authority to govern the conduct of proceedings before it and to govern the . . . conduct of attorneys."). "Congress delegated to the USPTO 'broad authority' to set procedural and ethical rules for those who practice before it, and Congress's grant of gapfilling authority necessitates that courts defer to the [USPTO's] choices where reasonable and not contrary to law." *Behnamian v. Hirshfeld*, 1:21-CV-1043RDAIDD, 2022 WL 1227996, at *4 (E.D. Va. April 26, 2022), *aff'd sub nom.*, *Behnamian v. Stewart*, No. 2024-1139, 2025 WL 615063 (Fed. Cir. Feb. 26, 2025).[5] ALJ Fernández-Pons's designation to conduct Plaintiff's disciplinary proceeding is consistent with the plain language of 35 U.S.C. § 32 and the discretion granted the Director thereby. The Court proceeds to answer any lingering concerns regarding the intent of Congress.

"[T]hree considerations[,] . . . commonly known now as the *Thunder Basin* factors," help courts determine "whether the particular claims" concerning agency action are "'of the type Congress intended to be reviewed within th[e] statutory structure.'" *Axon*, 598 U.S. at 186 (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994). First, whether "'a finding of preclusion could foreclose all meaningful judicial review.'" Second, whether "the suit is 'wholly collateral to a statute's review provisions.'" Third, whether "the claim[ ] [is] 'outside the agency's expertise.'" *Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (quoting *Thunder Basin*, 510 U.S. at 212-13). "The first *Thunder Basin* factor recognizes

---

[5] The Court is mindful that these cases were decided before the Supreme Court overruled *Chevron, U.S.A., Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See* discussion below. Nevertheless, they are persuasive, especially given the clarity of the statute, 35 U.S.C. § 32, at the crux of this matter.

that Congress rarely allows claims about agency action to escape effective judicial review."[6] *Id.* "The second and third factors reflect, in related ways, the purpose of special review provisions—to give the agency a heightened role in the matters it customarily handles, and can apply [its] distinctive knowledge." *Id.*; *Klein v. United States Postal Service*, --- F.4th ----, No. 25-3965, 2026 WL 2277051, at *3 (6th Cir. Aug. 7, 2026) (affirming the district court's dismissal of the plaintiffs' complaint for lack of jurisdiction after engaging in an analysis of the *Thunder Basin* factors). The "ultimate question" *Thunder Basin* asks is "whether Congress intended exclusivity when it established the statutory scheme" at issue. *Jarkesy v. S.E.C.*, 803 F.3d 9, 12 (D.C. Cir. 2015) (affirming district court dismissal of action for lack of subject-matter jurisdiction).

In *LegalForce, supra*, the plaintiff made a structural challenge, contending that the USPTO's disciplinary apparatus was facially unconstitutional. In its analysis, that district court relied on the Supreme Court's ruling in *Axon*. In *Axon*, the Court had expressly doubted that challenges to an agency's "commonplace procedures" are "'of the type'" thought to fall outside a statutory review scheme. 598 U.S. at 186, 189 (quoting *Thunder Basin*, 510 U.S. at 208, 212). After engaging in an analysis of *Axon*, the district court in *LegalForce* dismissed the action for want of subject matter jurisdiction and denied as moot Plaintiffs' request for a preliminary injunction.

---

[6] The Ninth Circuit found that when the first factor bodes against jurisdiction, it controls, even when the other two factors favor jurisdiction. *See Axon Enter., Inc.v. Fed. Trade Comm'n*, 986 F.3d 1173, 1187 (9th Cir. 2021), *rev'd on other grounds*, 598 U.S. 175 (2023).

(4:26CV1715)

In *Thunder Basin,* the Supreme Court held that the petitioner's due process claim could be "meaningfully addressed" in a court of appeals. 510 U.S. at 215. In *Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), the Supreme Court held the Civil Service Reform Act's ("CSRA") "elaborate" framework demonstrates Congress' intent to foreclose any further judicial review to both employees to which it grants administrative and judicial review as well as employees to which it denies statutory review. *Id.* at 11. The CSRA's statutory review scheme is exclusive, even for constitutional claims. *See id.* at 10, 13. *Thunder Basin* and *Elgin* involved challenges to a "specific substantive decision" implicating unique agency expertise – for example, "fining a company," as was true in *Thunder Basin*, or "firing an employee," as was the case in *Elgin*. *Axon*, 598 U.S. at 189. A case is more like *Axon* and *Free Enter. Fund* when the charge is that "an agency is wielding authority unconstitutionally in all or a broad swath of its work." *Id.* In such cases, the constitutional claim may be raised in a district court outside the statutory structure. In *Axon*, one plaintiff brought her constitutional claims before the operative hearing had begun and the other plaintiff filed suit immediately upon being charged. 598 U.S. at 182-83. If the case at bar were sufficiently analogous to those in *Axon*, the Court would have jurisdiction to adjudicate the lawsuit outside of the administrative channels established by 35 U.S.C. § 32. The Court, however, finds Plaintiff's challenge in the case at bar – that a non-USPTO "employee," *i.e.*, a HUD ALJ, is the hearing officer – to be more like *Thunder Basin* and *Elgin*, and less like *Axon* and *Free Enter. Fund*.

During the hearing, it was revealed that at most only one or two disciplinary cases in which an ALJ is the hearing officer are brought against attorneys in a given year. This is hardly a "broad swath" of the USPTO's work. *Id.* Also, Plaintiff brought this federal lawsuit nearly a year after having had the complaint filed against him in the USPTO, over six months after having

answered the complaint and sought to dismiss it; and over two months after the motion to dismiss was denied by the ALJ.[7]

Plaintiff argues that 35 U.S.C. § 32 specifies a class of persons (*i.e.*, "any attorney who is an officer or employee of the United States Patent and Trademark Office") to preside over disciplinary hearings. According to Plaintiff, under the canon of *expressio unius est exclusio alterius* – the express mention of one thing excludes others – Congress necessarily excluded attorneys who are not officers or employees of the USPTO (including ALJ Fernández-Pons, a HUD employee).[8] He cites to *Halverson v. Slater*, 129 F.3d 180 (D.C. Cir. 1997), for the first time in his Reply Memorandum. *See* ECF No. 26 at PageID #: 163- 65; 168. *Halverson* is a case in which the Court of Appeals for the D.C. Circuit applied the *expressio unius* canon in interpreting 46 U.S.C. § 2104(a), which provides that the Secretary of Transportation may delegate certain duties "to any officer, employee, or member of the Coast Guard," to preclude delegation to non-Coast Guard officials. *Halverson*, 129 F.3d at 184-86. That court did so notwithstanding the Secretary's general statutory authority to delegate to subordinates, *see* 49 U.S.C. § 322, finding that "the more specific provision controls." *Id.* at 186. The *Halverson* court held that the Secretary of Transportation's general statutory authority to delegate "duties and powers of the Secretary to an officer or an employee of the Department" was superseded by a

---

[7] On August 12, 2025, the USPTO's OED filed a Complaint against Plaintiff. Plaintiff answered and moved to dismiss on January 16, 2026. Plaintiff's motion was denied on May 8, 2026. *See* Stipulation Nos. 6, 38-41, including Exhibit 12 (ECF No. 27-12). In fairness, it must be acknowledged that a government shutdown stayed the matter from October 1 until November 25, 2025, but that does not negate Plaintiff's active involvement with the proceedings.

[8] That concept supports the Federal Defendants' position that only the U.S. District Court for the Eastern District of Virginia has jurisdiction to hear these matters, but does not support Plaintiff's interpretation of 35 U.S.C. § 32.

more specific provision that the "Secretary may delegate the duties and powers conferred by this subtitle to any officer, employee, or member of the Coast Guard." *Id.* at 183-84.

*Haverson*, however, does not discuss the statutory scheme at issue in the present case. In addition, the USPTO has been using ALJs with adjudicatory expertise from other agencies to oversee disciplinary hearings since at least the 1980s. *See* Exhibit 1 (ECF No. 27-1) through Exhibit 9 (ECF No. 27-9). On November 29, 1999, Congress amended 35 U.S.C. § 32 by, among other things, inserting before the last sentence the following: "The Director [of the USPTO] shall have the discretion to designate any attorney who is an officer or employee of the United States Patent and Trademark Office to conduct the hearing required by this section." Stipulation No. 20. As stated above, § 32 does not mandate the appointment of an officer or employee of the USPTO, but rather provides for the appointment of an officer or employee at the *discretion* of the Director.

In *Bender v. Dudas*, No. Civ.A. 04-1301 RBW, 2006 WL 89831 (D.D.C. Jan 13, 2006), *aff'd*, 490 F.3d 1361 (Fed. Cir. 2007), the plaintiff argued that the appointment of the ALJ was improper because it was made in violation of 35 U.S.C. § 32 since the ALJ was not an employee of the USPTO. The district court held that the USPTO properly used an outside ALJ to conduct disciplinary proceedings. *Id.* at *25. The court found that § 32 does not require the director of the USPTO to designate an officer or employee to oversee disciplinary proceedings. *Id.* at *24-25. Rather, the district court found it was proper to read the statute as simply giving the director the discretion to designate an officer or employee of the USPTO. *Id.*; *see also* Kroll v. Kappos, No. CV 09-1484 (JR), 2010 WL 11586785, at *1 (D.D.C. Jan. 29, 2010) (the 1999 amendment of 35 U.S.C. § 32 "is reasonably interpreted to permit, but not to require, the appointment of non-ALJ employees of the PTO to preside over disciplinary hearings") (emphasis in original)).

Plaintiff argues that *Bender* is not persuasive because, in reaching the conclusion that the USPTO Director is not required to appoint a USPTO employee to preside over disciplinary proceedings, the *Bender* court gave deference to the USPTO's interpretation of 35 U.S.C. § 32 under *Chevron, U.S.A., Inc. v. Nat. Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984). *See Bender*, 2006 WL 89831, at *24 (citing *Chevron*). Since *Bender* was decided, *Chevron* has been overruled by the United States Supreme Court. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). When the Supreme Court overruled *Chevron* in *Loper Bright*, it held that the "presumption" "that statutory ambiguities are implicit delegations [of authority to interpret statutes] to agencies" "cannot be reconciled with the [Administrative Procedure Act]." *Loper Bright*, 603 U.S. at 399-400. *Loper Bright*, however, "did not disturb the principle that an agency is 'authorized to exercise a degree of discretion' when the best meaning of the statute is that Congress has expressly delegated to the agency 'authority to give meaning to a particular statutory term.'" *U.S. Dep't of Labor v. Americare Healthcare Servs., Inc.*, 171 F.4th 838, 844 (6th Cir. 2026) (quoting *Loper Bright*, 603 U.S. at 394-95) (citing *Batterton v. Francis*, 432 U.S. 416, 425 (1977)).

**b.**

The statute that provides a mechanism for an agency to "borrow" ALJs provides: "An agency as defined by section 551 of this title which occasionally or temporarily is insufficiently staffed with administrative law judges appointed under section 3105 of this title may use administrative law judges selected by the Office of Personnel Management from and with the consent of other agencies." 5 U.S.C. § 3344. At least two district courts have rejected Plaintiff's claim that § 3344 does not apply in the case at bar. In *Welytok v. Dir. of USPTO*, No. 1:25-CV-110 (LMB/WEF), 2025 WL 3217842, at *8 (E.D. Va. Nov. 18, 2025), the district court

for the Eastern District of Virginia rejected Plaintiff's argument that § 3344 cannot permit the USPTO's "borrowing" of HUD ALJs because such use is neither occasional nor temporary. *Id.* at *8. "To that end, § 3344 'is intended to permit those [agencies] who do not need full-time examiners to borrow them as needed as well as to aid those agencies which may become temporarily or occasionally insufficiently staffed.' H.R. Rep. No. 79-1890, at 280-81 (emphasis added); see also Antonin Scalia, The Hearing Examiner Loan Program, 1971 DUKE L.J. 319, 340 ('The loan program has generally fulfilled the . . . expectation that it would prevent the hiring of hearing examiners by agencies with insufficient work to employ them full time.')." *Id.* The district court found "that § 3344's text and purpose support a robust use of the ALJ loan program and refute [plaintiff]'s narrow interpretation of the ALJ loan program." *Id.* Moreover, in *Bolton v. Pritzker*, No. C15-1607 MJP, 2016 WL 4555467, at *7 (W.D. Wash. Sept. 1, 2016), the district court rejected plaintiff's contention that 5 U.S.C. § 3344 bars the National Oceanic and Atmospheric Administration from "borrowing" ALJs from the EPA for long periods of time.

Finally, Plaintiff raised the same arguments at the administrative level that are now before the Court, and they were rejected. *See* Exhibit 12 (ECF No. 27-12). That too suggests that Plaintiff is unlikely to succeed on the merits.

For the above reasons, the Court finds Plaintiff has no likelihood of success on the merits.

**2. Irreparable Injury**

Plaintiff argues that proceeding before ALJ Fernández-Pons, regardless of the outcome, will cause him harm that cannot be remedied after the fact. A court must deny a preliminary injunction if a plaintiff fails to show any risk of irreparable injury. *PCC Airfoils*, 176 F.4th at 513. "[A]lthough the *extent* of an injury may be balanced against other factors, the *existence* of an irreparable injury is mandatory." *Id.* (quoting *D.T.*, 942 F.3d at 327) (emphasis in original).

While "irreparable harm" and "likelihood of success" often predominate, failure to make a clear showing as to any of the four factors is fatal, regardless of how strongly the other factors might favor the Plaintiff. *Kerwin*, 174 F.4th at 949.

The Court finds Plaintiff will not be irreparably harmed by going forward with the disciplinary hearing. Plaintiff cannot show that having to participate in the Disciplinary Case is irreparable harm because he has not established that (1) the structure of the process is illegitimate (as discussed above) or (2) that a hearing before ALJ Fernández-Pons will actually harm him. In *Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748 (10th Cir. 2024), the Tenth Circuit found the Supreme Court's jurisdictional holding in *Axon* did not support the plaintiff's irreparable harm arguments. The *Leachco* court rejected the argument that "'being subjected to an unconstitutional agency's proceeding,' without more, constitutes irreparable harm." *Id.* at 758 (citing *Axon*, 598 U.S. at 190-91), *cert. denied*, 145 S. Ct. 1047 (2025). The Sixth Circuit has also affirmed that being subjected to an allegedly unconstitutional proceeding is insufficient to show irreparable harm. *YAPP USA Auto. Sys., Inc. v. NLRB*, No. 24-1754, 2024 WL 4489598, at *2 (6th Cir. Oct. 13, 2024) (Order); *see also Millennia Hous. Mgmt. v. United States Dep't of Hous. & Urb. Dev.*, 783 F. Supp.3d 1051,1076 (N.D. Ohio 2025) (following the precedent of *Leachco* and *YAPP USA Auto. Sys., Inc.*). In addition, as earlier indicated, the Disciplinary Case was filed on August 12, 2025. Plaintiff did not file the present case until July 23, 2026. Delay "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury." *Cheetah Miner USA, Inc. v. 19200 Glendale, LLC*, No. 23-1410, 2023 WL 6601863, at *3 (6th Cir. Oct. 10, 2023) (citations omitted).

### 3. Harm to Others

Because Plaintiff has not shown likelihood of success on the merits and irreparable harm, the Court need not address the final two factors: whether the injunction would cause substantial harm to others and its impact on the public interest. In any event, the Court does recognize that during its hearing, the parties agreed[9] that the complainant, whom brought the allegations against Plaintiff in the Disciplinary Case, relies on a witness who is an elderly individual. The Federal Defendants believe that if the Court enters a preliminary injunction, the complainant may be deprived of having his allegations and evidence fully adjudicated before the USPTO in October 2026 due to the possible unavailability of that elderly witness. Without more, this factor is not sufficiently clear enough to turn the balance of the factors.

### 4. Public Interest

The public's interest is well served when an agency enforces regulations as promulgated by Congress. *See Cornish v. Dudas*, 540 F. Supp. 2d 61, 65 (D.D.C. 2008) (concluding, in a challenge to the USPTO's decision not to reinstate a practitioner, that the balance of hardships and the public interest factors weighed against an injunction), *aff'd sub nom.*, *Cornish v. Doll*, 330 Fed.Appx. 919 (Fed. Cir. 2009) (per curiam). In addressing this factor, the parties disagree on the boundaries Congress intended for 35 U.S.C. § 32, that is whether an ALJ from outside of the USPTO may preside over the Disciplinary Case. Plaintiff claims that the use of an ALJ from HUD is illegal and, therefore, against public interest.[10] Assured of the legality of its use of the HUD ALJ, the Federal Defendants claim an injunction would problematically delay it from

---

[9] Plaintiff's counsel responded that the complainant, himself, is not an elderly individual. Rather, there is a witness who is elderly.

[10] As well as causing irreparable harm.

maintaining control over whom may practice before it. *See* Federal Defendants' Opposition (ECF No. 25) at PageID #:126 (stating the "USPTO may set its own rules for who may practice and appear before it") (citing *Sperry v. Florida ex rel. Fla. Bar*, 373 U.S. 379, 402 (1963). Because the Court, as earlier explained, concludes the use of an ALJ from outside of the USPTO is permitted by 35 U.S.C. § 32, it finds that the public interest is well served when rules are followed as intended and that unnecessary delays are avoided. Therefore, the public interest factor weighs against the imposition of the injunction sought by Plaintiff.

## IV. Conclusion

For the reasons set forth herein, on the record, and those that have been articulated in the memorandum of the points and authorities on which the Federal Defendants rely in opposition to the motion (ECF No. 25), this action is dismissed for lack of subject matter jurisdiction. Assuming *arguendo* that the Court has subject matter jurisdiction, the Court denies Plaintiff's Motion for Preliminary Injunction (ECF No. 10) because Plaintiff has not demonstrated that he is entitled to the injunctive relief sought.

IT IS SO ORDERED.

September 18, 2026
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge